## FIRST NATIONAL BANK OF VALENTINE, NEB., Appellant, v. PETERSON, Sheriff, Respondent

### (293 N. W. 530.)

(File No. 8301.   Opinion filed August 16, 1940.)
Rehearing Denied October 22, 1940.

**Sutherland & Payne,** of Pierre (**O. M. Walcott,** of Valentine, Neb., of counsel), for Plaintiff and Appellant.

**C. E. Talbott,** of Winner and **H. O. Lund,** of Pierre, for Defendant and Respondent.

POLLEY, J.  Plaintiff is a national bank domiciled in the State of Nebraska and doing business at Valentine in that state.  On the 10th day of October, 1936, one C. W. Roundy made, executed and delivered to said plaintiff his promissory note for the sum of $2,020.19, payable six months after date, and to secure the payment of said sum of money mortgaged to the bank the following, among other, personal property:  " '47 hereford cows from 3 to 8 years old. 1 hereford bull, 3 years old.  29 calves mixed sexes, * * *' together with the increase of all the above described animals." Said property was located in Cherry County in the State of Nebraska and by the terms of the said chattel mortgage was to be kept within said Cherry County.  At some time prior to the execution of the said note and mortgage said C. W. Roundy had resided in and owned personal property in Todd County, South Dakota, against which personal taxes amounting to $346 had been levied; said property had been removed from said Todd County but said personal tax had not been paid or discharged.

On or about the 11th day of March, 1937, the cattle described in the said chattel mortgage were found in Todd County, South Dakota, whereupon the Treasurer of Tripp County, to which Todd County is attached for administrative purposes, issued and delivered to the sheriff of Tripp County, South Dakota, a distress warrant under and by virtue of which said sheriff levied upon and took into his possession all of the said cattle.  Immediately thereafter the plaintiff commenced this action, in claim and delivery,

against defendant for the recovery of the possession of said cattle. It does not appear from said complaint who brought said cattle into Todd County, nor how long they had been there when they were seized by such sheriff. The defendant demurred to the plaintiff's complaint on the ground that it does not state facts sufficient to constitute a cause of action. Said demurrer was sustained by the trial court and plaintiff appeals to this court.

It is alleged and will be assumed that plaintiff's mortgage was a valid, binding mortgage under the laws of the State of Nebraska, and under the rule of comity between the states the mortgage will be enforced by the courts of this state into which the property has been removed by the mortgagor. Grieme v. Robkes, 45 S. D. 480, 188 N. W. 745; Emerson-Brantingham Implement Company v. Ainslie, 38 S. D. 472, 161 N. W. 1001. The rule of comity is stated thus in American Law Institute, Restatement, Conflict of Laws, § 266: "If, after a chattel is validly mortgaged, the chattel is taken into another state, the mortgagee's interest in the chattel is recognized in the second state."

No question is raised as to the validity of the personal tax against the mortgagor in Todd County; nor is any question raised as to the validity of the tax lien existing against the personal property of the mortgagor in Todd County. What appellant claims is that the property involved in this case is not the same property upon which the tax was levied, and therefore such property is not subject to the lien under which defendant claims to have taken possession of the said mortgaged property. It is not material whether the property was taxable in Todd County, or whether it is the property upon which the tax was levied; the question is one of ownership. If the mortgagor was the owner of the property that was seized by defendant, such property was subject to the lien for the delinquent tax. Appellant further contends that the mortgaged property had its situs in Nebraska and was not removed from that state by appellant nor with its knowledge or consent and for that reason is not subject to said lien. This is not material.

SDC 57.0702 reads as follows: "All taxes assessed upon personal property within this state shall be·a first lien on all personal property of the person against whom personal taxes are assessed, from and after January first in each year."

Appellant contends that we gave too broad a meaning to the word "all", in § 6759, Rev. Code 1919 (SDC 57.0702); citing certain classes of property that could not be included within the meaning of said section because it is untaxable. This is not material to the issues in this case because it is not contended by appellant that the property involved is not taxable. So far as this case is concerned we are satisfied with the interpretation of the word "all" in the two places where it is used in SDC 57.0702, (Minneapolis Threshing Machine Company v. Roberts County, 34 S. D. 498, 149 N. W. 163, L. R. A. 1915D, 886).

Under the provisions of said SDC 57.0702, the lien against "all property" of the taxpayer continued in force and when the property involved in this case came into Todd County, the said lien at once attached to such personal property.

It is not material whether the property seized by the defendant in this action is the identical property on which the tax was levied. There is no question as to the validity of the mortgagee's lien on the property involved; neither is there any question as to the lien in favor of Todd County for the delinquent tax. Thus, we have two valid liens against the same identical property and the question becomes one of priority. And quoting from 10 Am. Jur. Chattel Mortgages, § 21: "The right of priority forms no part of the contract itself. It is extrinsic and rather a personal privilege, dependent upon the law of the place where the property lies." This view is expressed by the Supreme Court of New Mexico in Hart v. Oliver Farm Equipment Sales Co., 37 N. M. 267, 21 P.2d 96, 98, 87 A.L.R. 962. The facts in that case were that the defendant then residing in Texas, executed and delivered to the intervener a chattel mortgage. The transaction took place in Texas. The property was subsequently removed without the consent of the

mortgagee to the State of New Mexico. The plaintiff without the knowledge of the existence of any encumbrance levied an attachment in New Mexico. The court in its opinion said: "The validity of the intervener's mortgage as against the mortgagor, which is to be tested by the law of Texas, the place where the mortgage was executed and where the property was situated at the time of its execution, is undisputed. The question of the priority of the mortgage lien as against plaintiff's attachment lien is to be determined not by the law of Texas, but by the law of New Mexico, by virtue of its being not only the forum, but also the place where the property was situated at the time of the levy of attachment."

If the question of priority is to be determined by the law of South Dakota, the tax lien of the county is paramount. We think that this is the correct view. It finds some support in Am. Law Institute, Restatement, Conflict of Law, § 268:

(1) "If, after a chattel is validly mortgaged, it is taken into another state without the consent of the mortgagee, the interest of the mortgagee is not divested as a result of any dealings with the chattel in the second state."

(2) "Dealings with the chattel in a state into which it is taken without the consent of the mortgagee may result in new liens which have preference over the mortgage."

The question of priority of a garage keeper's lien was considered in C. I. T. Corporation v. Jorgenson, 60 S. D. 7, 242 N. W. 594. It involved an Indiana contract, but no question as to priority between the contract filed in that state and the garage keeper's lien in this state on the property removed without the consent of the seller was presented. The contract was subsequently filed in this state.

The order appealed from is affirmed.

SMITH, P.J., and ROBERTS and RUDOLPH, JJ., concur.

WARREN, J., not sitting.