SECURITIES ACCEPTANCE CORPORATION, Appellant,
v. GARROW et al., Respondents.

(46 N. W.2d 319)

(File No. 9145. Opinion filed February 13, 1951)

**Donley & Crill**, Elk Point, **Matthews, Kelley, Matthews & Delehant**, Omaha, for Appellant.

**Henry C. Mundt**, Sioux Falls, for Respondent.

ROBERTS, J.   Arthur G. Garrow, doing business as the Beresford Motor Company, was a retail automobile dealer in Beresford, Union County, South Dakota.   He had an arrangement with plaintiff, Securities Acceptance Corporation, Sioux City, Iowa, whereby chattel mortgages were given as security for money advanced to purchase motor vehicles from the N. & L. Motor Sales, a distributor of Kaiser-Frazer automobiles at Sioux Falls, South Dakota.

This is an action in claim and delivery to recover possession of a Kaiser Deluxe sedan and other cars not here involved for the purpose of foreclosing a chattel mortgage. Defendant Omer Kohn claims title to the Kaiser sedan as a purchaser in good faith for value.   There was no defense by defendant Garrow and he did not testify at the trial.   The case was tried to the court and resulted in findings and conclusions for defendant Kohn.   From a judgment entered thereon, plaintiff appeals.

The evidence discloses without substantial conflict that the Beresford Motor Company executed and delivered to plaintiff finance company its promissory note dated January 5, 1949, for $6,788.21 and at the same time and as a part of the same transaction executed and delivered to the finance company a chattel mortgage on three automobiles including the automobile in controversy and a green sedan hereinafter referred to.   This mortgage was filed in the office of the register of deeds of Union County on January 11, 1949. Defendant Kohn resided in Centerville, Turner County, South Dakota.   He agreed to purchase a black Kaiser four door sedan and in part payment thereof delivered to Garrow on December 27, 1948, his 1941 Ford sedan for which he was given credit in the sum of $1,100.   On January 10, 1949, without knowledge of the existence of the chattel mortgage, defendant Kohn paid to defendant Garrow the sum of $1,-136.27, the balance of the purchase price, and a copy of an invoice was handed to him by defendant dealer describing by serial and motor numbers a Kaiser sedan and enumerating the several items included in the total cost of $2,236.27. Garrow had a copy of an invoice for another sedan and there was no difference in the items listed and the total cost.   The distributor in these invoices did not specify the

color and Garrow stated to respondent that he didn't know whether the serial and motor numbers appearing in the copy of invoice furnished were those of the black sedan. The manufacturer made delivery at Willow Run, Michigan, on January 14, 1949, the date indicated in the invoices. Respondent drove the black sedan from the factory to Centerville. It was later learned that the serial and motor numbers in the copy of invoice handed to respondent were those of the green sedan delivered to Garrow and by him driven to Beresford. The Secretary of State issued to respondent a certificate of title upon a verified showing that the dealer had not executed or delivered a bill of sale and that his whereabouts was unknown to respondent.

There is evidence to show that the dealer, Garrow, did not receive the original invoices for the two sedans until the mortgage had been filed on January 11, 1949. The manager in the Sioux City office of appellant finance company testified: "The original of this invoice from N. & L. Motor Sales was deposited in a draft drawn by N. & L. Motor Sales in Sioux Falls, went through the regular bank channels, and cleared through our bank on January 7th, and on that date we gave our bank a check in payment of that draft. * * * The invoice is processed in our office, a mortgage is made up from the information given on the invoice. * * * The invoice is stamped 'Floor Planned by Securities Acceptance Corporation' and delivered to the dealers, mailed to the dealers, that is after the mortgage has been processed and completed and sent for filing. * * * We place that stamp on an invoice to alert others that the car is financed with our company."

The appellant claims that Garrow had no title which he could convey to respondent prior to January 11, 1949, and that the filing of the chattel mortgage imparted constructive notice to respondent of the mortgage lien. It is the claim of respondent that the filing of the chattel mortgage in Union County did not charge him with constructive notice of the mortgage and even though the chattel mortgage was effectively filed the implied consent of appellant to the sale of automobiles by the chattel mortgagee in the usual course

of business constituted, as to respondent a purchaser in good faith, a waiver of the mortgage lien.

SDC 39.0408 provides, in effect, that a chattel mortgage shall be filed in the county where the property is situated. This section declares that unless the original or an authenticated copy is so filed, the chattel mortgage is "void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property in good faith for value".

SDC 39.0410 provides: "The filing of a mortgage of personal property in comformity to the statutes applicable, operates as notice thereof to all subsequent purchasers and incumbrancers of so much of the property as is at the time of such filing situated in the county or counties where such mortgage or authenticated copy is filed."

This court in Rapid City Nat. Bank v. Spouse, 73 S.D. 493, 44 N.W.2d 437, recently held that the situs of property for chattel mortgage purposes is not necessarily at the place of residence of its owner, and that the filing of a chattel mortgage in the county of the residence of the mortgagor on an automobile and a trailer having a situs in another county did not operate as notice to persons mentioned in the statute.

The question then is whether the filing of the chattel mortgage in Union County imparted to respondent constructive notice. From the evidence it appears that at the time the mortgage was given and filed the property was in the State of Michigan. There is no evidence that the property was ever in that county. Appellant contends that filing of the mortgage in that county to which the parties intended that the property would be removed was proper and under the provisions of SDC 39.0413 constituted notice to subsequent purchasers. That section provides: "For the purpose of lien statutes, property in transit from the possession of the mortgagee to the county of the residence of the mortgagor, or to any location for use, storage, or care, is, during a reasonable time for transportation, deemed to be in the county in which the mortgagor resides or to which it is being moved for other purposes. For a like purpose personal property used in conducting the business of a common car-

rier is to be taken as situated in the county in which the principal office or place of business of the carrier is located."

We do not undertake to determine whether respondent acquired title or an interest in the automobile in controversy and became a purchaser prior to the filing of the chattel mortgage. It is clear that respondent acquired title not later than January 14, 1949, when he took possession of the property at Willow Run. Conceding, for the purpose of this case, that appellant is correct in its contention that respondent acquired no title or interest prior to the filing of the chattel mortgage, we do not think that the filing thereof was notice to respondent.

■ The filing statutes of a state as such have no extra-territorial effect. See Carroll v. Nisbet, 9 S.D. 497, 70 N.W. 634. In the case of removal of property into another state after lien of a mortgage has attached, the recognition and enforcement of the lien in the second state as against innocent purchasers rests in comity and not upon the effect of the filing or recording statute of the state from which the property is removed. Emerson-Brantingham Implement Co. v. Ainslie, 38 S.D. 472, 161 N.W. 1001; Grieme v. Robkes, 45 S.D. 480, 188 N.W. 745; First Nat. Bank v. Peterson, 67 S.D. 400, 293 N.W. 530. The situs of the property being in Michigan at the time of the execution and filing of the chattel mortgage, the mere filing did not impart constructive notice to a purchaser. Green v. Van Buskirk, 7 Wall. 139, 19 L.Ed. 109; Aultman & Taylor Machinery Co. v. Kennedy, 114 Iowa 444, 87 N.W. 435; In re Brannock, D. C., 131 F. 819; Morris Plan Co. v. Jenkins, Mo.App., 216 S.W.2d 160. A discussion of the subject is found in an annotation in 57 A.L.R. 702.

■ The provisions of Section 39.0413, supra, apply to "property in transit from the possession of the mortgagee to the county of the residence of the mortgagor". If we sustain the contentions of appellant, we must do so upon the theory that the automobile in controversy was property in transit from the possession of the appellant and that respondent was bound to search the records in Union County to discover if there were any mortgage liens thereon. In

First Nat. Bank v. Baldridge, 37 S.D. 606, 159 N.W. 130, this court recognizes that this section fixing the locus of property in transit will protect and preserve rights only if its requirements with respect to removal of the mortgaged property and filing of the mortgage are observed. The Supreme Court of Oklahoma construing identical language, § 11279 O.S. 1931, 46 O.S.1941, § 58, in Drum Standish Commission Co. v. First Nat. Bank & Trust Co., 168 Okl. 400, 31 P.2d 843, concluded that if mortgaged property is not in a county at time of the execution and filing of a chattel mortgage, but is intended to be removed to such county and later becomes situated therein, the mortgage becomes constructive notice from the time of arrival of the property and that a refiling of the mortgage after such arrival is not required. But we need not consider the effect of the statute during the time that mortgaged property is in transit. Aside from these considerations, the statute contemplates that the property is to be transported within a reasonable time from possession of the mortgagee to the residence of the mortgagor or other place mentioned in the statute, and before use or other control of the property by mortgagor, and there to remain quasi permanently. There is no evidence to support a conclusion that the mortgaged property was ever in the possession of the appellant. No right of appellant mortgagee as paramount to those of respondent purchaser was acquired under the filing statutes.

There was no error and the judgment is affirmed.

All the Judges concur.